UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CARLAS WILLIAMS

VERSUS

JOHN E. POTTER,
POSTMASTER GENERAL
UNITED STATES POSTAL
SERVICE

CIVIL ACTION

NO. 06-856-FJP-CN

**<u>RULING</u>**

This matter is before the Court on defendant's motion for summary judgment.[1]  Plaintiff has filed an opposition to the motion.[2]  For reasons which follow, Defendant's motion for summary judgment is granted.[3]

**I.   Factual Background**

Carlas Williams (hereinafter "Plaintiff" or "Williams") filed this lawsuit alleging that John E. Potter, Postmaster General of the United States Postal Service (hereinafter "Postal Service" or "Defendant"), as her employer discriminated against her based on her race in violation of Title VII of the Civil Rights Act of 1964[4] and

---

[1]Rec. Doc. No. 26.

[2]Rec. Doc. No. 31.

[3]The Court has considered all of the contentions of the parties whether or not specifically discussed in this opinion.

[4]42 U.S.C. § 2000(e), *et seq*.

her disability in violation of the Rehabilitation Act.[5]  Plaintiff also alleges the Defendant retaliated against her for reporting the alleged discrimination which is protected activity under Title VII.

The Defendant, in its motion for summary judgment, denies all of Plaintiff's allegations and seeks a ruling from the Court which dismisses all of Plaintiff's claims.

Plaintiff was hired by the United States Postal Service as a mail carrier in the Istrouma office located in Baton Rouge, Louisiana, in 1994.  Plaintiff was initially hired as a part-time carrier.  She became a full-time carrier shortly after her hire. Plaintiff's responsibilities included casing the mail, collecting the mail for the established route according to the sequence of delivery, and delivering the mail to recipients.  When Plaintiff delivered mail, she drove a Postal Service van ("LLV").

### A.   Plaintiff's Alleged Injuries

Approximately three years after she was employed at the Istrouma office, Plaintiff requested the delivery Route 524, which involved park and loop deliveries, dismount deliveries, curbside deliveries, apartment deliveries, and business deliveries.  For several of the deliveries on this route, Plaintiff was required to park her LLV at a designated area and deliver the mail by foot. These deliveries by foot required continuous walking and took between two and a half and three hours to complete.

---

[5]29 U.S.C. § 791.

On December 18, 2003, a mailbox fell on Plaintiff's foot during her mail delivery. On the following day, December 19, 2003, Plaintiff was taken by Delivery Supervisor Drusilla Parker to receive medical treatment for her injuries. The treating physician advised Plaintiff she could return to work, and she did so. Kevin Moulard, Supervisor of Customer Services, instructed Plaintiff to help another carrier with the mail delivery on Route 512. Plaintiff contends Moulard also instructed her to help the carrier on Route 531. Plaintiff states when she could not locate the carrier on Route 512, she proceeded to Route 531. After failing to locate the carrier on Route 531, Plaintiff decided to return to the Istrouma office. On her way back to the Istrouma Office, Plaintiff's LLV was struck by another vehicle. Following the accident, Plaintiff was taken to the Baton Rouge General for treatment. Because the emergency room was so crowded, she ultimately left the hospital and went to Lake After Hours.

Moulard notified Parker of her accident, and Istrouma Station Manager Cynthia Hall advised Parker to go to the clinic to authorize medical treatment for the Plaintiff. Parker also advised Moulard that Plaintiff was on Route 531 when the accident occurred. Moulard also stated he never instructed the Plaintiff to help on Route 531.

The physician at the clinic evaluated the Plaintiff and advised that she could return to work. However, Plaintiff subsequently visited her personal physician who advised against Plaintiff's

return to work.  Plaintiff's physician also referred her to Dr. Thad Broussard, an orthopedic surgeon, who diagnosed Plaintiff with acute cervical and lumbar sprain.  In January of 2004, Dr. Broussard performed an exam which revealed that Plaintiff did not meet the regular physical requirements of her mail carrier position. Plaintiff did not return to work until September of 2004.

**B.   Plaintiff's Employment Problems**

The Postal Service's handbook instructs that city carriers should not deviate from their assigned route unless authorized by their manager.[6]  Because Moulard advised that he did not instruct Plaintiff to help on Route 531, and because the Plaintiff insisted that she was so instructed, the Postal Service contacted Inspection Service to investigate the matter.

The Postal Inspection Service began its investigation on January 6, 2004.  During the course of the investigation, Moulard was given a polygraph test which he passed on April 9, 2004.  Thus, the Postal Service contends the polygraph report supported Moulard's contention that he did not instruct the Plaintiff to assist on Route 531.  On April 22, 2004, the Inspection Service interviewed Plaintiff and offered her the opportunity to take a polygraph test, but she declined to take the polygraph test.  Plaintiff contends she declined to take the polygraph test on the advice of her union representative.  Plaintiff also challenges the correctness of

---

[6]Section 131.31 of Handbook M-41.

Moulard's polygraph results since she contends the report was not signed, and no details regarding the questions asked or any other information relating to the polygraph examination was provided in discovery.

On May 4, 2004, the Postal Inspector completed an Investigative Memorandum.  Upon review, Parker determined Plaintiff should be issued a disciplinary action.  This determination was approved by Shieleta Augustus, Acting Station Manager of the Istrouma Station. Around June 8, 2004, Plaintiff was issued a Notice of Removal which advised Plaintiff that her employment with the Postal Service would be terminated effective July 16, 2004.

Before this termination took effect, Plaintiff filed a grievance under the procedure set forth in the agreement between the Postal Service and the National Association of Letter Carriers ("NALC").  This agreement provides that an employee cannot be terminated and removed from the payroll of the Postal Service until the grievance proceedings have been exhausted.  Plaintiff's grievance was resolved on July 30, 2004, and Plaintiff's Notice of Removal was reduced to a discussion, which does not constitute discipline under the terms of the union agreement.  Thus, Plaintiff was never terminated by the Postal Service.

Following the accident in December of 2003, Plaintiff applied for workers' compensation benefits.  The Department of Labor ("DOL") granted Plaintiff's application and she began receiving benefits in

February of 2004.  The Postal Service appealed this determination on the basis that Plaintiff had deviated from her work route when the accident occurred.  The Postal Service contended Plaintiff was not within the course and scope of her employment when the accident occurred.  The DOL reviewed her application and terminated Plaintiff's benefits on August 8, 2004.  Plaintiff returned to work on September 18, 2004, under several work restrictions given by her treating physician.  Plaintiff appealed the decision by the DOL and her workers' compensation benefits were reinstated on July 14, 2005, almost ten months after plaintiff's return to work.  The Postal Service stated it was prepared to offer Plaintiff a limited duty assignment when she returned to work, but Plaintiff did not return to work immediately following the accident upon her physician's declaration that she was totally incapacitated from working.[7]

Prior to Plaintiff's accident, she had submitted a leave form requesting 40 hours of annual leave from April 5, 2004 through April 10, 2004.  As Delivery Supervisor, Drusilla Parker kept track of Plaintiff's leave time.  When Plaintiff was receiving workers' compensation benefits, her time was recorded as leave without pay. Parker erroneously charged Plaintiff for annual leave based on Plaintiff's April request while she was receiving workers' compensation benefits, which resulted in Plaintiff being overpaid.

---

[7]Limited duty assignments are governed by the Federal Employees Compensation Act (FECA) and are given to employees who receive on-the-job injuries whose claims are approved by the DOL.

Parker stated she believed she was required to charge Plaintiff the requested annual leave.  In May 2004, Plaintiff was notified of the overpayment and sought to have her annual leave restored.  The Postal Service sent Plaintiff a letter of demand advising that her annual leave would be restored after she paid the Postal Service $373.79, the amount of the leave she had received in error.

Following the DOL's denial of her workers' compensation benefits, Plaintiff was advised that her limited duty status was terminated and she could apply for light duty work when she returned.  Pursuant to the Postal Service's agreement with the NALC union, full-time employees on light duty are not guaranteed 40 hours of work and may be sent home before the end of their tour for lack of work.  Plaintiff was aware of this policy.  Plaintiff's physician completed her light duty form stating Plaintiff could return to work on September 14, 2004, with a standing restriction, a 1 hour sitting restriction, a 2-3 hour restriction for casing mail, and a prohibition from delivering mail.  Around September 18, 2004, Plaintiff returned to work and received the light duty assignment of casing the mail on her route.

The Postal Service, in compliance with these restrictions, would approach Plaintiff after a few hours of work and advise her to clock out and leave work.  Plaintiff testified she did not understand why she was being sent home and wanted to work more

hours.[8]  Plaintiff made an appointment with her physician on January 26, 2005, and requested he allow her to deliver mail because there was not enough office work for her to perform.  The physician did not believe Plaintiff could meet the physical demands of her job as a mail carrier and expressly advised that Plaintiff should not deliver mail on the street.  However, the physician testified that he allowed Plaintiff to deliver mail simply because she made the request.[9]

On September 13, 2006, Plaintiff submitted the Postal Service with a Form CA-17, which allows a physician to provide an interim report on the duty status of an employee with a disabling injury.  In this form, Plaintiff's physician included a 2 hour walking restriction and noted Plaintiff could carry her mail route 3 days a week.  In June of 2007, another Form CA-17 was submitted by the same physician with the same restrictions as provided in the September 2006 form.

The Court now turns to a discussion of the applicable law and analysis in this case.

## II.  Law and Analysis

### A.    Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no

---

[8] *See* Deposition of Carlas Williams, pp. 77-78.

[9] *See* Deposition of Dr. Thad Broussard, pp. 37-38.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[10]   The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[11]   A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[12]   If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[13]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there

---

[10]Fed. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[11]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).   See also *Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[12]*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[13]*Id.* at 1075.

is a genuine issue for trial.[14]   The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[15] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[16]   The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[17] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[18]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

_____

[14]*Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[15]*Little*, 37 F.3d at 1075;  *Wallace*, 80 F.3d at 1047.

[16]*Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[17]*McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[18]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

summary judgment."[19]   The Court now turns to a discussion of each of plaintiff's claims.

**B.   Disability Discrimination Claim**

Plaintiff claims the Defendant's employment actions were discriminatory on the basis of her disability.   The Rehabilitation Act is the exclusive remedy for federal employees claiming disability discrimination.

### 1.   *Prima Facie* case

To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must prove she is:   (1) an "individual with a disability," (2) who is "otherwise qualified" for the position sought; (3) who worked for a "program or activity receiving Federal financial assistance;" and (4) was discriminated against "solely by reason of her disability."[20]   The Rehabilitation Act adopts the standards applied under Title I of the Americans with Disabilities Act of 1990 ("ADA") to determine whether there has been a violation.[21]

In *Pinkerton v. Spellings*, the Fifth Circuit recently addressed whether the fourth prong set forth above allows the "motivating factor" standard to be applied by the Court as opposed to "sole

---

[19]*Id.* at 248, 106 S.Ct. at 2510.

[20]*Hileman v. City of Dallas, Tex.,* 115 F.3d 352, 353 (5th Cir. 1997)(quoting 29 U.S.C. § 794(a)).

[21]29 U.S.C. § 794(d) referencing the ADA, 42 U.S.C. § 12111, *et. seq.*

causation" standard.[22]   Finding it "consistent with [] statutory history that the federal government intends courts to apply the identical causation standard to claims brought by its own employees and plaintiffs suing under the ADA,"[23] the Fifth Circuit held: "Under a plain reading of the statute, and in accord with the position of other circuits, we conclude that the ADA does not require 'sole causation.'"[24] Thus, as in ADA cases, "'discrimination need not be the sole reason for the adverse employment decision, [but] must actually play a role in the employer's decision making process and have a determinative influence on the outcome.'"[25]

The ADA defines "disability," as "a physical or mental impairment that substantially limits one or more of [a person's] major life activities."[26]  To show an impairment that "substantially limits a major life activity," a plaintiff "must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."[27]  Major life activities may include: "functions such as

---

[22]529 F.3d 513 (5th Cir. 2008).

[23]*Id.* at 517.

[24]*Id.* at 519.

[25]*Id.*, quoting *Soledad v. United States Department of Treasury*, 304 F.3d 500, 503-04 (5th Cir. 2002).

[26]42 U.S.C. § 12102(2)(A).

[27]*Toyota Motor Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 197,
(continued...)

caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[28]

The Postal Service contends Plaintiff did not submit summary judgment type of evidence to establish a *prima facie* case of disability discrimination because she failed to satisfy her burden of proving that she is an individual with a disability under the Act. The Postal Service admits for the purpose of this motion that the Plaintiff has physical impairments, but argues these impairments do not meet the definition of "disabled" because these impairments do not "substantially limit" any major life activities. The Court now turns to whether Plaintiff has carried her burden of establishing a *prima facie* case of disability discrimination.

### a. Substantially limiting major life activities

The record reveals and the Defendant concedes that the Plaintiff is restricted in the following activities: lifting, walking, sitting, and standing. The parties do not dispute that Plaintiff's back condition constitutes an impairment within the meaning of the ADA. However, Defendant notes that not all impairments are serious enough to be considered disabilities under the statute.

To be considered a "disability," an impairment must

---

[27](...continued)
122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

[28]45 C.F.R. § 84.3.

substantially limit a major life activity.[29]  Under the relevant
EEOC regulations, "'[m]ajor life activities means functions such as
caring for oneself, performing manual tasks, walking, seeing,
hearing, speaking, breathing, learning, and working.'[30]  This list
is not meant to be exclusive, and the Appendix to Section 1630
suggests that other major life activities could include lifting,
sitting, or standing."[31]  In fact, the Fifth Circuit has recognized
that, "while not specifically listed in the EEOC regulations, 'major
life activities could include lifting, reaching, sitting, or
standing.'[32]  Major life activities refers to those activities that
are of central importance to most people's everyday lives."[33]  The
Fifth Circuit has stated that "[t]he ADA does not define either
'substantially limits' or 'major life activity,' but the EEOC has
promulgated regulations under the ADA that define those terms.
Whether an impairment is substantially limiting depends on: '(1) the
nature and severity of the impairment, (2) its duration or expected

---

[29]*Dupre v. Charter Behavioral Health Systems of Lafayette,
Inc.*, 242 F.3d 610, 614 (5th Cir. 2001), citing *Dutcher v. Ingalls
Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995).

[30]*Id.* at 614, n. 3, quoting 29 C.F.R. § 1630.2(i).

[31]*Id.* (See 29 C.F.R. § 1630, Appendix to Part 1630-Interpretive
Guide on Title I of the Americans with Disabilities Act, §
1630.2(l).

[32]*Jenkins v. Cleco Power, L.L.C.*, 487 F.3d 309, 315 (5th Cir.
2007), quoting *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725,
n. 7 (5th Cir. 1995).

[33]*Id.*

duration, and (3) its permanent or expected permanent or long-term impact.'"[34]

In *Dupre v. Charter Behavoiral Health Systems of Lafayette, Inc.*, the plaintiff-employee claimed she was disabled under the statute because she could not stand or sit in one place for more than an hour due to her degenerative disc disease and degenerative facet joint disease.[35]  Dupre was employed as a mobile assessment coordinator, and her job was to respond to requests from outside medical providers for psychological assessments of patients and to provide referrals for psychological hospitalization.  Dupre also had frequent attendance problems, causing her employer to find that "excessive absenteeism made her an undependable employee."[36]  Dupre was ultimately discharged, and she filed suit claiming that she was discriminated against on the basis of her disability and failure to provide reasonable accommodation.   The district court granted summary judgment in favor of the employer, and Dupre appealed.

The Fifth Circuit initially addressed whether Dupre had a substantially limiting impairment under the ADA.  Dupre argued she was substantially limited in three major life activities: standing, sitting, and working.   The defendant conceded that sitting and

---

[34]*Dupre*, 242 F.3d at 614, citing *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2145, 144 L.Ed.2d 450 (1999)(citing 29 C.F.R. § 1630, App., § 1630.2(j)).

[35]*Id.* at 611-12.

[36]*Id.*

standing are major life activities.[37]  The parties did not dispute
that Dupre's back condition constituted an impairment under the
ADA.[38]  Dupre argued that her limitations in sitting required her to
get up every hour and walk around, and her limitations in standing
required that for every hour she stands, she must walk or sit for
a while thereafter.[39]

The Fifth Circuit discussed the applicable jurisprudence and
held:

> In the case before us, Dupre's ability to sit
> or stand in one place for up to one hour at a
> time before having to walk around makes clear
> that the "condition, manner, or duration"
> under which she was able to sit or stand was
> not significantly restricted as compared with
> the average person. 29 C.F.R. § 1630.2(j)(l).
> *See also Taylor v. Pathmark Stores, Inc.*, 177
> F.3d 180, 186 (3rd Cir. 1999)(upholding
> summary judgment against an employee who
> required hourly breaks while sitting or
> walking because the employee's ability to
> stand and walk was not significantly less than
> that of the average person). Dupre was
> therefore not substantially limited in the
> major life activities of standing and
> sitting.[40]

Regarding Dupre's claim that she was substantially limited in
the major life activity of working, the Fifth Circuit noted that
she "was required to demonstrate that her back injury precluded her

---

[37]*Id.* at 613.

[38]*Id.* at 613-14.

[39]*Id.* at 614.

[40]*Id.*

from a class of jobs or a broad range of jobs.[41]  'The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.'"[42] Furthermore, the United States Supreme Court has held that "[i]f jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs.  Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs."[43]

The Fifth Circuit found that Dupre was only precluded from jobs involving very strenuous physical activity, prolonged standing or sitting, heavy lifting, or prolonged walking.  The court stated: "There exist, however, many jobs involving only light labor that Dupre seemed perfectly capable of performing. ... An inability to engage in the kind of intense physical exertion required of some jobs hardly disqualifies Dupre from all jobs involving manual labor."[44]

This Court finds that the holding in *Dupre* is directly applicable to Williams' case.  While the Court acknowledges

---

[41]*Id.*, citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *Pryor v. Trane*, 138 F.3d 1024, 1027 (5th Cir. 1998).

[42]*Id.*, quoting *Pryor*, 138 F.3d at 1027 (quoting 29 C.F.R. § 1630.3(j)(3)(I)).

[43]*Sutton*, 119 S.Ct. at 2151.

[44]*Dupre*, 242 F.3d at 615.

Plaintiff's back condition is an impairment, she has failed to present summary judgment evidence that such impairment substantially limits any major life activities.   The relevant jurisprudence supports this holding.   The Court further finds Plaintiff's argument that she is precluded from working in an entire class of medium physical level jobs to be without merit and not supported by the record in this case.   Plaintiff is disqualified from only a narrow range of jobs.   Similar to the *Dupre* plaintiff, Williams has not presented any summary judgment type evidence that she is substantially limited in the major life activity of working.   In fact, Williams testified in her deposition that there are jobs she could perform considering her work experience.[45]   This was also confirmed by her doctor who testified that Williams' medical restrictions did not preclude her from working in other occupations.[46]   Thus, the Court finds that Williams is not disabled within the meaning of the statute, and Plaintiff has failed to set forth a *prima facie* case of disability discrimination as a matter of law.

### b.   Sole causation or Motivating Factor

The Defendant also argues Plaintiff cannot meet the fourth requirement to establish a *prima facie* case of disability discrimination: that she was discriminated against "solely by

---

[45]*See* Deposition of Carlas Williams, p. 152.

[46]*See* Deposition of Dr. Thad Broussard, p. 34.

reason of her disability." As the Court stated earlier in this opinion, the Fifth Circuit's decision in *Pinkerton* clarified that the standard to be applied by the Court is not sole causation but a "motivating factor."[47]   However, even applying the motivating factor standard to the facts of this case, Plaintiff has failed to create a genuine issue of material fact on this issue.

After reviewing the entire record in this case, the Court finds that Plaintiff has failed to present any summary judgment type evidence that her alleged disability was a motivating factor in the actions taken against her.   The mistake the defendant made in charging Plaintiff for annual leave while she was receiving worker's compensation benefits was satisfactorily explained by the Defendant.   The Plaintiff has offered no evidence beyond her own subjective belief, and the Court has found none in the record, which suggests that the defendant's action was intentional or that her back condition was a motivating factor for the action.

The Court also finds Plaintiff has failed to present any summary judgment evidence to show that the Defendant issued the Notice of Removal based on her medical condition.   The record reflects that the Notice of Removal was issued several months following Plaintiff's accident and only after the Defendant conducted an investigation which determined that Plaintiff's actions on the day of her accident violated her duty not to deviate

---

[47]529 F.3d 513 (5th Cir. 2008).

from her assigned route.[48]   Thus, the Court finds Plaintiff has
failed to satisfy the fourth requirement to prove a *prima facie*
case for disability discrimination.   Further, the Court finds that
summary judgment is proper in favor of the Defendant on the
disability discrimination issue since there are no genuine issues
of material fact in dispute.[49]   It is clear Defendant is entitled
to summary judgment as a matter of law on the disability claim
under the facts of this case.

---

[48]The Court notes that in Plaintiff's opposition to the motion
for summary judgment (Rec. Doc. No. 31), she devotes the entire
argument to whether the proper legal standard requires sole
causation or allows for a motivating factor.   While Plaintiff is
correct that *Pinkerton* held the standard is a motivating factor,
Plaintiff fails to argue, present any factual evidence, or discuss
any applicable jurisprudence which specifically addresses what
actions by the Defendant create a genuine issue of material fact
that Plaintiff's medical condition was a motivating factor for the
negative actions taken against her.

[49]Because Plaintiff failed to establish a *prima facie* case of
disability discrimination for the reasons set forth above, the
Court need not employ the burden-shifting analysis under *McDonnell-
Douglas*.   If the Plaintiff had properly established a *prima facie*
case for disability discrimination, the Court finds in the
alternative that the Defendant has offered legitimate, non-
discriminatory reasons for the actions taken against the Plaintiff.
The Court believes the record supports a finding that the annual
leave charged was a mistake with no malevolent intent.   The Court
also finds the Notice of Removal was issued to Plaintiff based on
the Defendant's investigation and a business decision was made that
Plaintiff improperly deviated from her assigned delivery route.
Finally, the Court finds Plaintiff's light duty assignment was
based on the DOL's denial of her workers' compensation benefits.
Thus, once Plaintiff returned to work, Plaintiff was no longer
eligible for a limited duty assignment which would have guaranteed
her full-time hours.

2.    **Failure to Exhaust Administrative Remedies**

The Plaintiff claims she was denied a reasonable accommodation of her disability by the Postal Service.  Section 717 of the Civil Rights Act of 1964 permits most federal employees to seek relief from proscribed discriminatory employment practices in Federal District Court.  As a precondition to seeking this judicial relief, complaining employees must first exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency.[50]  A federal employee alleging unlawful discrimination on the basis of race or disability must contact an Equal Opportunity Office counselor within 45 calendar days of the alleged discriminatory action or within 45 calendar days of the effective date of the action for a personnel action, before the employee may file a formal administrative charge with the employee's agency's Equal Opportunity Office.[51]

The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers.  On one hand, because "'the provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated pro

---

[50]*Pacheco v. Mineta*, 448 F.3d 783 (5th Cir. 2006), citing *Brown v. General Servs. Admin.*, 425 U.S. 820, 96 S. Ct. 1961, 1967-68, 48 L.Ed.2d 402 (1976); *Martinez v. Dept of U.S. Army*, 317 F.3d 511 (5th Cir. 2003); 29 C.F.R. § 1614.105-107 (2005).

[51]*See* 42 U.S.C. § 2000e-16; 29 C.F.R. § 1614.105.

se, the scope of an EEO complaint should be construed liberally."[52] On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC in an attempt to achieve non-judicial resolution of employment discrimination claims.[53]   However, "'[a] *less* exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance.'"[54]   Following the above standards, the court must determine what is properly embraced in the review of a Title VII claim somewhat broadly and not solely by the scope of the administrative charge itself.   In other words, the Court must review the scope of the EEOC investigation which "'can reasonably be expected to grow out of the charge of discrimination.'"[55] In this regard, the Fifth Circuit has stated: "We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners,

---

[52]*Pacheco*, 448 F.3d 788, citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970), *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983).

[53]*Id.* at 788-89, citing *Sanchez*, 431 F.2d at 466.

[54]*Id.* at 789, quoting *Sanchez*, 431 F.2d at 467 (emphasis in original).

[55]*Id.*, quoting *Sanchez*, 431 F.2d at 466.

to its substance rather than its label."[56]

While the administrative charge is to be construed liberally, the desired liberality is achieved by the application of the rule that the courts will look beyond the scope of the charge's language and to the scope of the EEO investigation which can reasonably be expected to grow out of the charge.  This liberal construction applies even in cases brought against the federal government, despite the Supreme Court's admonition that Title VII's conditions on the waiver of sovereign immunity be strictly construed.[57]

The Postal Service contends Plaintiff did not contact an EEO counselor and allege the Defendant failed to reasonably accommodate her when she returned to work in September of 2004.  In opposition, the Defendant contends that the formal complaint filed with the EEO counselor included allegations that Plaintiff was wrongfully charged 40 hours of annual leave for vacation time and that she was issued a Notice of Removal which would result in her termination. When the Postal Service accepted Plaintiff's complaint for investigation,  it notified the Plaintiff and her attorney of the accepted issues for the investigation.  The Postal Service argues if Plaintiff disagreed with the defined issues set forth at that time, she was required to notify the Postal Service in writing

---

[56]*Id.*, citing *Fellows*, 701 F.2d at 451; *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).

[57]*Id.* at 789, n 9.

within seven calendar days.  The Postal Service alleges Plaintiff never notified the Postal Service that she disagreed with the accepted issues for the investigation.  Thus, the Postal Service contends the Court should not consider Plaintiff's reasonable accommodation claim since she failed to include such an allegation in her EEO complaint and therefore failed to exhaust administrative remedies on that claim.

The Plaintiff contends she has exhausted administrative remedies on the reasonable accommodation claim since the EEO record reveals that the charge of discrimination includes information submitted by Plaintiff about a similarly situated white employee who received a reasonable accommodation for his disability.[58]  The Plaintiff also argues that in the EEO judge's dismissal of Plaintiff's charge, the applicable law referred to includes "Disability-Accommodation," and therefore, Plaintiff contends the EEO judge must have considered this charge.

The Postal Service notes in response to Plaintiff's argument that the document wherein Plaintiff contends the white employee was accommodated for his disability is signed by her and dated on July 28, 2004.  The Postal Service notes Plaintiff did not return to work until September of 2004; therefore, she could not have alleged

---

[58]*See* Rec. Doc. No. 26-5, p.10: "Mike Miller...injured on the job, had surgery, missed over a year of work, and currently works in an office position with no loss of benefits, yet Ms. Williams was assigned a nurse to rush her back to work and was later terminated by USPS."

prior to her return to work that the Defendant failed to accommodate her disability.  The Postal Service also argues it was the Postal Service's EEO Compliance and Appeals Office that considered Plaintiff's discrimination charge and not an EEO administrative judge.  Furthermore, Defendant contends "Disability-Accommodation" is simply a heading which appeared on the final decision, and nothing in the final decision mentions a claim that the Defendant failed to accommodate Plaintiff upon her return to work.

The Court finds that Plaintiff cannot rely on the statements about the white employee's accommodation made on July 28, 2004, because they are prior to Plaintiff's return to work on September of 2004.  Thus, the Court agrees Plaintiff has failed to exhaust her claim for reasonable accommodation.  However, out of an abundance of caution, and in the alternative, the Court will address the reasonable accommodation claim since the Defendant is also entitled to summary judgment on this issue.

### 3. Reasonable Accommodation Claim

The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of

the business of such covered entity."[59]   A plaintiff can state a claim for discrimination based on an employer's failure to accommodate a disability by showing that: (1) the employer is covered by the statute; (2) she is an individual with a disability; (3) she can perform the essential functions of the job with or without reasonable accommodation; and (4) the employer had notice of the disability and failed to provide accommodation.[60]

The Court has already held that Plaintiff is not an "individual with a disability" under the statute for reasons previously given in this opinion.   In addition and as discussed earlier, the Postal Service was bound by FECA to give Plaintiff light duty work since her claim was denied by the DOL and she was no longer receiving workers' compensation benefits upon her return to work.   Had Plaintiff returned to work prior to August 8, 2004, she would have been given limited duty and been guaranteed full-time hours.   The Postal Service did not have the discretion to deviate from this policy, and Plaintiff has failed to present any summary judgment evidence to create an issue of fact that the Postal Service denied her a reasonable accommodation in violation of her rights.

---

[59]*Bridges v. Dept. of Social Services*, 254 F.3d 71 (5th Cir. 2001), quoting 42 U.S.C. § 12112(b)(5)(A).

[60]*Id.*, citing *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512 (2d Cir. 1995)(stating that a failure to provide a parking space for a disabled employee may present a cognizable claim under the ADA).

Thus, the Court finds in the alternative that Plaintiff has presented no genuine issues of material fact on this claim, and summary judgment in favor of the Defendant should be granted as a matter of fact and law on the issue of reasonable accommodation.

**C.   Race Discrimination Claim**

Plaintiff also claims the actions taken against her by the Postal Service were based on her race in violation of Title VII. Under applicable jurisprudence, without direct evidence of discrimination, a plaintiff must establish the following elements of a *prima facie* case of discrimination under the *McDonnell Douglas* framework: (1) she is a member of a protected group, in this case African-American; (2) she was qualified for her position; (3) she was discharged or suffered some adverse employment action; and (4) she was replaced by a person outside of the protected class or was treated less favorably than similarly situated employees of a different race.[61]   Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to assert a non-discriminatory, legitimate reason for the termination.[62]

Under the "modified *McDonnell Douglas* approach" employed by the Fifth Circuit, if the defendant meets this burden, the burden shifts back to the plaintiff to show:  "(1) that the defendant's

---

[61]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Okoye v. University of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

[62]*Id.* at 802, 93 S.Ct. 1817.

reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. (mixed-motive[s] alternative)."[63]  The question of pretext versus mixed-motive treatment is only reached after a plaintiff has met her *prima facie* showing under the modified *McDonnell Douglas* standard and the defendant has responded with a legitimate nondiscriminatory reason.[64]  If a plaintiff then demonstrates that the protected characteristic was a motivating factor in the employment decision, "'it then falls to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus.  If the employer fails to carry this burden, plaintiff prevails.'"[65]

In the present case, Plaintiff claims that Mike Miller, a Caucasian employee, was reasonably accommodated after his on-the-job shoulder injury while she was deprived of work hours upon returning to work following her injury.  Plaintiff contends this alleged fact satisfies her burden of showing that she was treated less favorably than an employee outside of her race.

---

[63]*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005), citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

[64]*Id.*, citing *Rachid*, 376 F.3d at 312.

[65]*Id.*, quoting *Rachid* 376 F.3d at 311-12.

The law requires the Plaintiff show that a similarly situated employee received better treatment under "nearly identical circumstances."[66]   The Defendant contends Miller was offered the accommodations he received because at all relevant times, Miller's workers' compensation claim was active and approved by the Department of Labor.   Thus, the Postal Service argues Miller is not "similarly situated" to Plaintiff because his workers' compensation claim was active at the time he was offered limited duty assignments to accommodate his shoulder injury.   Under federal law, the Postal Service is required to accommodate a limited duty employee with medical work restrictions.   The Postal Service contends that, unlike Miller, when Plaintiff returned to work, her workers' compensation claim was not active since it had been terminated by the DOL.

The Court finds that Plaintiff has failed to present evidence that a similarly situated employee of a different race was treated more favorably than she was.   Miller and Williams were clearly not "similarly situated" nor were they in "nearly identical" circumstances under the facts of this case.   With the exception of discussing Miller's accommodation, Plaintiff's opposition does not discuss Plaintiff's burden of proving prong four, that similarly situated employees outside Plaintiff's race were treated more

---

[66] *See, Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).

favorably.  Instead, Plaintiff focuses on whether she suffered an adverse employment action[67] and then challenges the legitimacy of the Defendant's proffered non-discriminatory reasons for the actions taken.  In discussing the charging of annual leave and the Notice of Removal, Plaintiff does not present a scintilla of evidence suggesting her race as a motivation other than her own subjective belief and deposition testimony that white postmaster Paul Edling, to whom she complained about her annual leave, told her to "just suck it up."[68]  When asked why Plaintiff believed this statement was related to her race, she replied, "I believe because if I would have been white he wouldn't have never (sic) done that."[69]   Plaintiff's subjective belief alone is insufficient summary judgment evidence to create a genuine issue of material fact on this claim.

Even if the Plaintiff had set forth a *prima facie* case of race discrimination, the Postal Service argues the same legitimate, non-discriminatory reasons for charging the plaintiff with annual leave and for issuing plaintiff a Notice of Removal as with respect to

---

[67]Because the Court finds Plaintiff has failed to satisfy the fourth prong of the test for race discrimination, the Court sees no need to engage in a lengthy discussion over the ultimate employment decision standard versus the adverse employment standard as argued in the parties' briefs.

[68]Rec. Doc. No. 31, p. 20, quoting Deposition of Carlas Williams, pp. 129-130.

[69]*Id.*, quoting Deposition of Carlas Williams, pp. 129-130.

the disability discrimination claim addressed previously in this opinion.

In response to plaintiff's argument that she was denied enough work hours upon her return to work, the Postal Service offered a legitimate, non-discriminatory reason that since plaintiff's workers' compensation claim was no longer active, it was not obligated to give her a limited duty assignment. As discussed previously, full-time employees on light duty are not guaranteed 40 hours of work per week and may be sent home before the end of a work day for lack of work. Thus, the Postal Service contends plaintiff has failed to show any evidence of pretext for race discrimination in this decision.

Plaintiff contends the Postal Service's articulated reasons for the actions taken against her are false and a pretext for race discrimination. Primarily, Plaintiff argues that the Notice of Removal was based solely on Plaintiff's decision not to take a polygraph test in the course of the investigation of Plaintiff's alleged unauthorized deviation from her delivery route. Plaintiff contends the inadmissibility of polygraph exams in trials, the Defendant's failure to provide plaintiff any indicia of the test's validity, and the fact that Plaintiff was advised by her union representative not to take the test, are all factors that reveal pretext in the Defendant's decision to issue Plaintiff a Notice of Removal. Plaintiff contends the polygraph should not even be

considered by the Court; thus, it is her word against her supervisor's word on whether or not she was told to deviate from her assigned delivery route.

The Court finds the discussion about the polygraph exam irrelevant under the law to be applied to this case. A business decision was made by the Postal Service based on the facts in its possession, and the Postal Service determined that Plaintiff had deviated from her authorized delivery route. The Court is not called upon to review a business decision made by an employer. The Court's role is to determine whether Plaintiff has presented evidence that the Defendant's decision was motivated by Plaintiff's race. The Plaintiff bears the burden of proving that her race or her disability was a motivating factor in the actions taken against her, not that the Defendant's decision was ultimately wrong or based on what she believes was an unfair investigation. Simply stated, Plaintiff has submitted no summary judgment evidence whatsoever that her race played any role in the Notice of Removal issued to her by the Postal Service, irrespective of whether the Postal Service was correct in basing its decision upon the polygraph exam of Plaintiff's supervisor and her failure to submit to such an exam. Plaintiff's own subjective belief is insufficient to overcome an articulated legitimate, non-discriminatory reason for the action taken against her.

Addressing the issue of Plaintiff being erroneously charged

annual leave, the Court finds that even if Parker's actions were perhaps negligent and unfair to the Plaintiff from a business standpoint, the issue remaining for the Court to determine is whether Plaintiff has presented the Court with summary judgment evidence that the Defendant's action was somehow motivated by Plaintiff's race.  Plaintiff repeats in her opposition that the Defendant took these actions "in blatant disregard for Ms. Williams' rights."[70]   This statement does not suggest how Plaintiff's race played a factor in the Defendant's decisions.

For the reasons set forth above, the Court finds that the Defendant is entitled to summary judgment on the race discrimination claim since Plaintiff has failed to present any genuine issues of material fact in dispute on this claim.

**D.   Retaliation Claim**

Plaintiff has also brought a claim against the Postal Service for retaliation.  To prove her retaliation claim, the Plaintiff must establish that: (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action.[71]   Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge,

---

[70]Rec. Doc. No. 31, p. 19.

[71] *See, Ackel v. National Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003); *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).

testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.[72] The United States Supreme Court has held that an adverse employment action is one that a reasonable employee would find to be "materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[73] To establish a causal connection, a plaintiff must show that, "but for" her complaints concerning the alleged discrimination, she would not have suffered the adverse employment action.[74] Thus, "even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct."[75]

Clearly, Plaintiff has met the requirements (1) and (2) above since the Plaintiff did engage in protected activity by complaining about alleged race and disability discrimination and she did suffer actions which the Court finds to be materially adverse under the

---

[72]*Ackel*, 339 F.3d at 385, citing *Green v. Adm'rs of Tulane Educational Fund*, 284 F.3d 642, 657 (5th Cir. 2002) *(rev'd on other grounds).*

[73]*Burlington Northern and Santa Fe Ry Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2414, 65 L.Ed. 345 (2006).

[74]*Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999); *Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 402-03 (5th Cir. 2000).

[75]*Rubinstein*, 218 F.3d at 402-03.

facts of this case.  When evaluating whether an adverse employment action was causally related to the protected activity, the Court must consider the "temporal proximity" between the protected activity and the adverse employment action.[76]  However, "while close timing between an employee's protected activity and an adverse employment action can establish a *prima facie* case of retaliation, close timing alone is insufficient to establish pretext."[77]

The Court notes that it must consider "whether the [adverse action] was done with discriminatory intent, not whether it was correct from a business, ethical, or personal perspective."[78]  Thus, for the same reasons set forth earlier in this opinion, whether the Postal Service made the correct decisions with regard to the actions taken against Plaintiff is not an issue for this Court to decide.  Rather, the issue before the Court is whether these decisions were made with a retaliatory motive.  It is clear from the record in this case that no retaliatory motive has been

---

[76]*Mauder v. Metropolitan Transit Authority of Harris County, Texas*, 446 F.3d 574 (5th Cir. 2006)(citing *Wilson v. Lemington Home for the Aged*, 159 F. Supp.2d 186, 195-96 (W.D. Pa. 2001)).

[77]*Campbell v. England*, 234 Fed. Appx. 183, 2007 WL 1454542 (5th Cir. May 17, 2007)(citing *Strong v. Univ. HealthCare Sys.*, 482 F.3d 802, 808 (5th Cir. 2007); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)).

[78]*Morrison v. Weyerhaeuser Co.*, 119 Fed. Appx. 581, 585, 2004 WL 2830846 (5th Cir. Dec. 10, 2004)(citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)("[An employer] is entitled to be unreasonable so long as it does not act with discriminatory animus"); see also *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)).

established.

The record establishes that Plaintiff submitted the leave request form prior to her accident and injury.  The Postal Service contends Parker was unaware of the procedures in processing leave requests for employees who subsequently began receiving workers' compensation benefits.  The Postal Service also argues it could have immediately dismissed Plaintiff upon discovering that she was working in an unauthorized delivery route.  Instead, the Defendant chose to conduct a thorough investigation and issued the Notice of Removal five months after Plaintiff's accident.

Even if the Court found that Plaintiff carried her burden of proving a *prima facie* case of retaliation based on the proximity of the adverse employment actions to Plaintiff's protected activity, the Plaintiff must rebut the Defendant's legitimate, non-discriminatory reasons for the adverse employment actions and must show that "but for" Plaintiff's protected activity, the adverse actions would not have occurred.  The Court finds that Plaintiff has failed to do so under the facts of this case.  Therefore, the Court finds that summary judgment should be granted in favor of the Defendant on the Plaintiff's retaliation claim since there are no genuine issues of material fact in dispute on this claim.

## III. Conclusion

For the reasons set forth above, the Court finds that there are no genuine issues of material fact in dispute which would

preclude the Court from granting summary judgment in favor of the Defendant.  Therefore, summary judgment is granted in favor of the United States Postal Service on all claims, and Plaintiff's claims are dismissed with prejudice.

Judgment shall be entered accordingly.

Baton Rouge, Louisiana, September 30, 2008.

FRANK J. POLOZOLA
MIDDLE DISTRICT OF LOUISIANA